UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

STEVON ANZALDUA,           )
                                    )
       Plaintiff,          )
                                    )
    vs.                )       Case No. 4:13CV01257 ERW
                                    )
NORTHEAST AMBULANCE and   )
FIRE PROTECTION DISTRICT, et al.  )
                                    )
       Defendants.     )

**MEMORANDUM AND ORDER**

This matter comes before the Court on a "Motion to Dismiss" filed by Defendants

Northeast Ambulance and Fire Protection District ("Fire District"), Derek Mays, Clarence Young,

Bridget Quinlisk-Dailey, Robert Lee, Quinten Randolph, and Kenneth Farwell (Fire District and

individual defendants moving for dismissal collectively referred to as "Defendants") [ECF No. 9].

I.    **BACKGROUND**

On July 2, 2013, Plaintiff Stevon Anzaldua ("Plaintiff") filed a Complaint against

Defendants and defendant Kate Welge, alleging his employment with Fire District was terminated

on September 26, 2012, as a result of a conspiracy among the Defendants and Kate Welge[1] [ECF

No. 1].  In his Complaint, Plaintiff brings two claims pursuant to 42 U.S.C. § 1983, alleging the

termination violated his First Amendment right to free speech (Count I, against Defendants Lee,

Mays, Quinlisk-Dailey, Randolph, and Farwell, the "Fire District Defendants"), and Defendants

and Defendant Kate Welge conspired to violate Plaintiff's constitutional rights cognizable under

42 U.S.C. § 1983 (Count II, against all defendants).  Plaintiff also alleges that Defendant Kenneth

---

[1]Defendants' Motion for Dismissal is not brought on behalf of Defendant Kate Welge,
who is represented by separate counsel.

Farwell and Defendant Kate Welge violated federal and state computer privacy laws (Counts III and IV).

Defendants filed their Motion to Dismiss on August 26, 2013 [ECF No. 9].  Plaintiff filed his "Memorandum in Opposition to Defendants Northeast Ambulance and Fire Protection District, Derek Mays, Clarence Young, Bridget Quinlisk-Dailey, Robert Lee, Quinten Randolph and Kenneth Farwell's Motion to Dismiss" on September 16, 2013 [ECF No.  13].  On September 25, 2013, Defendant's filed their Reply [ECF No. 14].

## II.    STATEMENT OF FACTS

For purposes of this Motion to Dismiss, the following facts, as alleged in Plaintiff's Complaint and exhibits incorporated therein, are accepted as true.

Plaintiff was hired as a paramedic by Fire District in January of 2008, and worked for the district as a paramedic and firefighter.  Plaintiff and Defendant Welge were involved in a romantic relationship, which ended in July of 2011.  During their relationship, Welge gained access to Plaintiff's private email and passwords.  At some point, Welge worked for Defendant Farwell at a bar.

 Prior to Plaintiff's termination, the state health department accused Fire District of numerous violations, including, but not limited to, the expiration of its license to possess and administer controlled substances, failing to maintain annual inventory of controlled substances, failing to maintain appropriate records to account for drug security, and failing to provide adequate security procedures to detect and prevent the diversion of controlled substances.

In April 2012, the Fire District, through the individually named defendants, began to harass Plaintiff in retaliation for his expression of certain opinions and facts about problems at the Fire District.  On July 23, 2012, Plaintiff drafted an e-mail to the Fire District's Medical Director,

Dr. David Tan, regarding issues and concerns at the Fire District.  However, Plaintiff did not send the e-mail to Dr. Tan.

Plaintiff alleges that, upon information and belief, Fire District Battalion Chief Kenneth Farwell and Kate Welge, either individually or in conspiracy with another, accessed his private e-mail account sometime in July 2012, and sent the draft e-mail to Dr. Tan and the Board.

On August 20, 2012, Plaintiff was suspended for ten (10) days, due to the e-mail forwarded to Dr. Tan.  On August 23, 2012, Plaintiff drafted and sent an e-mail to Ms. Elizabeth Holland of the *St. Louis Post-Dispatch* [ECF Nos. 1, 1-1].  In this e-mail, Plaintiff informed Ms. Holland that he had "tried to reach out to the directors only to be disciplined for 10 days for an email sent to the medical director with critical concerns regarding the service we provide citizens as it pertains to medical emergencies" [ECF No. 1-1 at 1].   Some of the concerns Plaintiff communicated to Ms. Holland included "staffing mishaps," non-compliant self-contained breathing apparatuses,  safety issues, unnecessary expenditures for vehicles, use of publicly-owned vehicles for personal use, and a lapse in the Fire District's license to administer controlled substances [ECF Nos. 1, 1-1].

On August 31, 2012, the *St. Louis Post-Dispatch* ran a story written by Ms. Holland, "Northeast Fire District is Grilled Over Mishandling State Drug Paperwork," which reported the expiration of the Fire District's license to possess and administer controlled substances [ECF Nos. 1, 1-2].

On September 13, 2012, Plaintiff received a notice of hearing to appear before the Fire District's Board of Directors (the "Board'), namely defendants Derek Mays, Clarence Young, and Bridget Quinlisk-Dailey.  The hearing concerned the August 23, 2012 email Plaintiff sent to Ms. Holland.  Plaintiff was suspended pending the hearing.

Plaintiff alleges, "[u]pon information and belief, Defendant Farwell and Defendant Welge, working alone and/or in conspiracy with another," accessed his e-mail account, and Defendant Farwell obtained, "illegally and without authorization," a copy of the August 23, 2012 e-mail sent to Ms. Holland, and distributed it to the Board [ECF No. 1 at 5].

On September 26, 2012, the Fire District provided Plaintiff with written notification of his termination, effective immediately [ECF Nos. 1, 1-3].  In this Letter of Termination, Fire District Fire Chief Quinten R. Randolph stated the Board, on April 7, 2012, had extended Plaintiff's probationary period for six additional months for Conduct Unbecoming an Employee, and had suspended Plaintiff for ten shift days and had issued a last chance letter on August 13, 2012, for a second incident of Conduct Unbecoming an Employee [ECF No. 1-3].  Fire Chief Randolph informed Plaintiff of the following finding of facts regarding his most recent violation:

> The Board accepted your admission and there from (sic) concluded that you circulated an email publicly defaming and denigrating the District without just cause.  It was also determined that your statements were seditiously false and misleading as well as ill-intended, divisive, and retaliatory for prior discipline issued by the Board in good faith.  Even though you admitted conveying statements to, at least, one public entity; the number of other people and entities that you actually conveyed them to is unknown.  The Board found your explanation for publicly expressing and circulating false and misleading information to others as not credible.
>
> In sum, the Board deemed this conduct to be totally unacceptable.  It has therefore decided to terminate your employment effective immediately for again violating the District's Code of Conduct.

[ECF No. 1-3].

III.    LEGAL STANDARD

4

A party may move under Rule 12(b)(6) to dismiss a complaint for "fail[ing] to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss is to test "the sufficiency of a complaint[.]"  *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Ordinarily, only the facts alleged in the complaint are considered for purposes of a motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  Although courts must accept all factual allegations as true, they are not bound to take as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

**IV.    DISCUSSION**

5

In their "Motion to Dismiss," Defendants contend Plaintiff fails to state a claim as to any of the counts alleged in his Complaint, because his allegations lack the specificity and factual support required by *Iqbal*, 556 U.S. at 669-70, and *Twombly*, 550 U.S. at 556, and assert Plaintiff's Complaint consequently should be dismissed in its entirety [ECF Nos. 9, 10]. Defendants also argue that Plaintiff has not met, and cannot meet, the statutory requirements of the  Federal Stored Wire and Electronic Communications and Transactional Records Access Act ("the SCA"), 18 U.S.C. § 2707, or the Missouri Computer Tampering Act, §§ 569.095-569.099 RSMo.  They ask the Court to grant their Motion, dismiss Plaintiff's claims with prejudice, award them attorneys' fees and costs, and for such other and further relief as the Court deems just and proper.

### A.      Municpal Liability under 42 U.S.C. § 1983: Policy and Custom Claims

Defendants claim Plaintiff's Complaint fails to state a cause of action for municipal liability under 42 U.S.C. § 1983, contending he provides no factual support for his single allegation that "[u]pon information and belief, the Fire District has a policy and/or custom of punishing employees for speech made by employees as private citizens about issues and matters of public concern and/or the termination decision at issue herein was made and/or ratified by those with final policymaking authority."

In his response, Plaintiff states his Complaint alleges the Fire District Defendants terminated him for exercising his First Amendment rights by sending the April 23, 2012 email to Ms. Holland discussing matters of public concern relating to the operation of the Fire District. Plaintiff asserts the Complaint alleges the decision to terminate him was made or ratified by those with final policymaking authority, and he argues it "does not matter which of the defendants, sued in their official capacity, had final policymaking authority, as long as the unconstitutional act was

6

committed by one with final policymaking authority" [ECF No. 13 at 3].  He states the Board has final policymaking authority for the Fire District.  He argues that these Complaint allegations, in consideration with the April 23rd email and the "Letter of Termination," attached as exhibits, sufficiently states a claim for municipal liability against the Fire District, including a claim against Fire District officials acting in their official capacity.

In their Reply, Defendants note that Plaintiff sued both the Fire District and five individuals in their official capacities, and they contend the claims against the individuals in their official capacities should be dismissed as redundant, because the Complaint alleges a claim against the Fire District [ECF No. 14 at 4].  This Court agrees.  A suit against a public employee in his official capacity is merely a suit against the public employer.  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).  *See also Artis v. Francis Howell N. Band Booster Ass'n Inc.*, 161 F.3d 1178, 1182, 1185 (finding district court correctly dismissed claim, against school official sued only in his official capacity, as redundant to claim against official's public employer, a school district).  Accordingly, the Court will dismiss, as redundant, Plaintiff's claims brought against individuals in their official capacities.

Defendants also argue that the Complaint's allegation for municipal liability is a conclusory statement of the elements of a *Monell*[2] claim, with no factual allegations supporting it, and they contend the claim is plainly insufficient under *Twombly* and *Iqbal*.  A local government is responsible under 42 U.S.C. § 1983 for its employee's or agent's violation of another's constitutional rights when it is the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).

_____

[2] *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).

7

The Eighth Circuit carefully differentiates between claims based on policy and those based on custom.  *See Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998).  Official policy involves a deliberate choice, made from among various alternatives, of a guiding principle or course of action, by an official with final authority to establish governmental policy.  *Id.* Plaintiff's Complaint identifies no official policy that was unconstitutional on its face or as implemented, or that arguably played a role in his termination.  Consequently, the Court must determine whether the Complaint sufficiently alleges the existence of a municipal custom.  *Id.*

"Alternatively, 'custom or usage' is demonstrated by . . . [t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees[.]"  *Id.*  Unconstitutional custom claims also require the showing of deliberate indifference to or tacit authorization, after notice of the unconstitutional misconduct, by the governmental entities' policymaking officials after notice, and evidence the custom was the moving force behind the alleged misconduct.  *Id.*  Plaintiff has alleged no previous incidents or complaints where Defendants have punished employees for speech made as private citizens about issues and matters of public concern .  He has not asserted any allegations of deliberate indifference to or tacit authorization of similar unconstitutional misconduct, after receiving notice, exhibited by any defendants.  The Court finds Plaintiff's Complaint fails to allege sufficiently the three requirements of a unconstitutional custom claim.  Accordingly, the Court will dismiss Plaintiff's cause of action for municipal liability under 42 U.S.C. § 1983, contained in Count I of his Complaint.

**B.**    **Individual Capacity Claims for Violation of First Amendment Rights**

Defendants argue Plaintiff fails to state sufficiently against the individual Fire District defendants a claim of retaliatory discharge for engaging in First Amendment speech.  They claim Plaintiff makes no specific allegations against the individual defendants, but instead groups together five individuals (Lee, Mays, Quinlisk-Dailey, Randolph, and Farwell) as "Fire District Defendants," without indicating which Defendant is responsible for alleged actions.

In his response, Plaintiff states that his Complaint does not sue Young or Quinlisk-Dailey in their individual capacities [ECF No. 13 at 5].  In accordance with this express representation, the Court finds Plaintiff's claims against Young and Quinlisk-Dailey are against Young and Quinlisk-Dailey in their official capacities only.  *See Artis*, 161 F.3d at 1182 (plaintiff must expressly and unambiguously state that public official is being sued in his individual capacity; otherwise the court will assume defendant is sued only in his official capacity).   As discussed above, a suit against a public servant in his or her official capacity is merely a suit against the public employer.  *See Johnson*, 172 F.3d at 535.  Given the Plaintiff's express representation, and the Complaint's failure to state a cause of action for municipal liability, the Court therefore finds all claims against Young and Quinlisk-Dailey should be dismissed.

However, Plaintiff argues that Fire District Board members Lee and Mays are sued in their individual as well as official capacities, because their votes in favor of his termination show their personal involvement in the First Amendment constitutional injury he suffered.  As a general matter, government officials are prohibited by the First Amendment from subjecting individuals to retaliatory actions for "speaking out."  *Bernini v. City of St. Paul*, 665 F.3d 997, 1006-07 (8th Cir. 2012).  To prevail on a First Amendment retaliation claim, Plaintiff must show that he engaged in protected activity, that the defendants' actions caused an injury to him that would chill an person of ordinary firmness from continuing to engage in the protected activity, and that a

causal connection between the retaliatory animus and his injury existed.  *Id*. at 1007.  To establish the necessary causation, Plaintiff must show he was "singled out" for exercising his constitutional rights.  *Id.*

In his Complaint, Plaintiff alleges Lee and Mays voted to terminate his employment with the Fire District after they found he "had circulated an email to a reporter with the *St. Louis Post-Dispatch* regarding problems and issues at the Fire District" [ECF No. 1 at 3].  Plaintiff also alleges that the Fire District Defendants began harassing him in April of 2012, for expressing as a private citizen, certain opinions and facts about the Fire District, and that he was placed on extended probationary status and suspended, before he ultimately was terminated.  He further alleges:  "The Fire District Defendants cited the August 23, 2012 email as the only reason for Anzaldua's termination from his employment." [ECF No. 1 at 6].  Accepting Plaintiff's factual allegations as true, the Court finds Plaintiff's Complaint sufficiently states a claim against Lee and Mays in their individual capacities.  Accordingly, as to the individual capacity claims brought against Lee and Mays, the Court will deny Defendants' Motion to Dismiss.

Plaintiff also contends Randoph's personal participation in the violation of his First Amendment rights is evidenced by the "Letter of Termination" attached to the Complaint as an exhibit.  In their Reply, Defendants note Fire Chief Randolph outlines the Board's findings in the "Letter of Termination," but the letter does not indicate Randolph had any role in the termination decision [ECF No. 14 at 5].  Defendants assert that Plaintiff's Complaint does not allege Randolph was doing anything other than following the Board's directive. They contend, consequently, Randolph should be dismissed from the action, because it is the Board that has the authority to make employment-related decisions, and the connection Plaintiff makes between the Board's power and Randolph is feeble.  The Court agrees.  Randolph apparently played little role

in the adverse employment action.  Plaintiff's Complaint makes no specific allegations against Randolph, nor has he alleged that Randolph played any role in the investigation, or the termination decision.  Randolph's status as Fire District Chief, and his writing of the termination letter, are not enough to allow a reasonable jury to find that Randolph was himself involved in any unlawful activity.  Instead, the most that can be inferred from the allegations of Plaintiff's Complaint and the termination letter is Randolph did nothing but follow the Board's instructions and inform Plaintiff of the Board's decision.  *See Criswell v. City of O'Fallon, Mo.*, 2007 WL 1760744 at *4 (E.D. Mo. June 15, 2007) (granting motion to dismiss as to individual councilmen and mayor, because they lacked authority to terminate the plaintiff and had no involvement in employment decisions ).  The Court finds that Plaintiff's Complaint fails to state a claim against Randolph in his individual capacity.  Accordingly, the Court will dismiss Defendant Randolph from the action.

Plaintiff argues that the Complaint's allegation, "upon information and belief that Farwell illegally accessed [Plaintiff's] personal email account to obtain the email [Plaintiff] sent to Ms. Holland and gave it to the Board[,]" shows Farwell "set in motion" Plaintiff's unconstitutional termination.  Defendants argue Plaintiff's sole allegation that Farwell, "upon information and belief," distributed the April 23rd email to the Board "is insufficient, particularly because there is no other factual support whatsoever for the claim" [ECF No. 14 at 6].  The Court disagrees, and finds that, as to Farwell, the Complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Accordingly, as to the individual capacity claim brought against Farwell, the Court will deny Defendants' Motion to Dismiss.

### C.   <u>Due Process Rights Violation</u>

Defendants contend Plaintiff fails to state sufficiently a claim for violation of his due process rights, because the Complaint does not describe the Fire District's processes, allege why the process were allegedly improper, or indicate what type of due process violation Plaintiff alleges he suffered.  Paragraph 8 of Plaintiff's Complaint states, in pertinent part: "This action is brought pursuant to 42 U.S.C. § 1983, as well as the First, Fifth and Fourteenth Amendments to the United States Constitution." [ECF No. 1 at 3].  Paragraph 30 of Plaintiff's Complaint states: "Anzaldua's termination by the Fire District Defendants under color of state law violates his rights secured by the Constitution of the United States, specifically the First, Fifth and Fourteenth Amendments." [ECF No. 1 at 7].  Paragraph 40 of the Complaint also references the Fifth and Fourteenth Amendments: "As a direct and proximate result of the conspiracy amongst Defendants and in furtherance thereof, Anzaldua was . . . thereby deprived of constitutionally protected speech, liberty, and due process rights secured by the First, Fifth, and Fourteenth Amendments . . .." [ECF No. 1 at 10].

Defendants argue that Plaintiff's vague references to the Fifth and Fourteenth Amendments fail to give them notice as to what Plaintiff's alleged due process claim against them is, or what alleged facts form the basis of such a claim.

In his Response, Plaintiff states:

> Count I of Plaintiff's Complaint alleges that he was terminated in violation of his First Amendment rights.  Plaintiff does not discuss the sufficiency of a due process claim against the Fire District Defendants because he does not allege such a claim.

[ECF No. 13 at 6].

In their Reply, Defendants request the Court to dismiss any due process rights claims asserted in the Complaint, "[b]ecause Plaintiff now indicates he intends to abandon these due

process and Fifth Amendment claims, or he never intended to make such claims." [ECF No. 14 at
7]. The Court agrees. Consequently, the Court dismiss, as abandoned, any due process claims
asserted by Plaintiff in his Complaint.

     **D.**     **Count II's Conspiracy Claims**

     Defendants assert the conspiracy claims contained in Plaintiff's Count II should be
dismissed because they are exceptionally vague and delineate no factual support for a conspiracy.
Defendants argue that, although Plaintiff alleges Defendants engaged in the three overt acts, he
improperly groups all Defendants together, and fails to plead any facts that could plausibly show
they conspired together to deprive him of any constitutional rights.   In Count II, Plaintiff alleges:
1) Defendants fired him after he exercised his right of free speech; 2) "[u]pon information and
belief," Defendants engaged in a sham investigation to cover up Plaintiff's public allegations
against Farwell and the Fire District and to exonerate Farwell; and 3) Farwell and Welge illegally
accessed his private emails and disseminated them to the Board. Defendants contend Plaintiff fails
to allege any facts that would show the Board members colluded or conspired before casting their
votes, and fails to support his statements, that unspecified defendants engaged in a sham
investigation and that Farwell and Welge illegally accessed his email, with any factual allegations.
Defendants state: "There is no factual support that all of the Defendants knew each other, much
less conspired together." [ECF NO. 10 at 11].

     Plaintiff argues he alleged overt acts that provide a reasonable inference of a conspiracy,
contending he need only allege sufficient facts for the Court plausibly to infer an agreement
among the Defendants, and he asserts he has done so under the totality of the facts set forth in
Complaint [ECF No. 13 at 7-9]. Plaintiff contends Defendants clearly knew each other, stating
that: 1) Mays, Young , Quinlisk-Dailey, and Lee were Board members; 2) Randolph and Farwell

were Fire District employees; and 3) he alleged Welge worked for Farwell at a bar [ECF No. 13 at 9].  Plaintiff further argues that his "information and belief" allegations are sufficient to state a claim, contending a contrary holding would make Federal Civil Procedure Rule 11(b)(3) meaningless.  *See* Fed. R. Civ. P. 11(b)(3) (allowing a party to identify allegations that will likely have evidentiary support after reasonable opportunity for further investigation or discovery).

In their Reply, Defendants argue that Plaintiff's Complaint contains no factual allegations to support a mutual understanding or "meeting of the minds" among the defendants concerning a conspiratorial objective [ECF No. 14 at 7-8].  They claim the Complaint's conspiracy arguments are jumbled and confusing, and contend Plaintiff asserts naked allegations without any factual support and attempts to include all possible conspiracy theories.  Defendants emphasize that one of the "overt acts" alleged in the Complaint is "once again based 'upon information and belief[,]'" and provides no further factual detail to support his allegation of a "sham investigation" [ECF No. 14 at 8].

To prevail on a Section 1983 conspiracy claim, Plaintiff must show that two or more individuals conspired for the purpose of depriving him of a constitutional right, and that an action was performed by at least one of the alleged co-conspirators in furtherance of the conspiracy, causing an injury or deprivation.  *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). Conspiracy allegations "must be pled with sufficient specificity and factual support to suggest a 'meeting of the minds.'" *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988) (citation omitted). The Court finds nothing in Plaintiff's Complaint and incorporated exhibits to support an inference that Farwell and Welge had a "meeting of the minds" to deprive him of his constitutional rights by accessing his private email. Plaintiff's complaint does not charge that Welge, a private individual,

14

agreed with a state officer to deprive Plaintiff of his constitutional rights.  Plaintiff's Complaint

only vaguely alleges:

> Upon information and belief, Defendant Farwell and Defendant Welge, working
> alone and/or in conspiracy with one another, accessed Anzaldua's email account
> and Defendant Farwell and without authorization obtained a copy of the August
> 23, 2012 email sent to Ms. Holland and then distributed it to the Board.

[ECF No. 1].

Plaintiff's complaint lacks an allegation of an agreement between Welge and one of the state

officers to cause a deprivation of Plaintiff's constitutional rights.  Consequently, Plaintiff's

Complaint fails to bring Welge within the reach of Section 1983.  *See Dennis v. Sparks*, 449 U.S.

24, 27-28 (1980)(private parties involved in a conspiracy act "under color" of law for purposes of

§ 1983 actions when they are willful participants in joint activity with a state actor).

Nor does the Court find factual allegations to support an inference Defendants had

reached any agreement to conduct a sham investigation, or that the Board colluded or conspired

before casting their votes in the termination decision.  In fact, Board member Young was not even

on the Board when Plaintiff was terminated and thus he could not have participated in any

investigation, or in the termination decision; and Board member Quinlisk-Dailey actually voted

against Plaintiff's termination [ECF No. 1 at 2].  Clearly, these individuals were not a part of any

conspiracy to deprive Plaintiff of a constitutional right.  The Court finds that Plaintiff has not

pleaded a conspiracy claim.  *See Criswell v. City of O'Fallon, Mo.*, 2007 WL 1760744 at 884-5

(E.D. Mo. June 15, 2007) (Conspiracy allegations must be supported by material facts, not

conclusory statements).  Accordingly, the Court will dismiss, in its entirety, Count II of Plaintiff's

Complaint.

### E.      The Federal Stored Wire & Electronic Communications & Transactional Records Access Act

Defendants argue Plaintiff's third count, a claim against Farwell and Welge brought pursuant to the SCA, 18 U.S.C. §§ 2701 and 2707, should be dismissed.  Defendants claim Plaintiff has not provided sufficient facts to indicate the alleged unauthorized access of his emails took place while the data was in the electronic storage of a electronic communications service. They also contend an untransmitted "draft" email fails to qualify as an "electronic communication" covered by the SCA.  Concerning the untransmitted "draft" email written by Plaintiff to Dr. Tan, Plaintiff's Complaint alleges the following:

> 14.  On or about July 23, 2012, Anzaldua drafted an email to the Medical Director of the Fire District, Dr. David Tan, regarding issues and concerns at the Fire District.
>
> 15.  Although Anzaldua had drafted an email to Dr. Tan, he did not send the draft email.
>
> 16. upon information and belief, Defendant Welge and Defendant Farwell, either individually or in conspiracy with another, accessed Anzaldua's private email account and sent the draft email to Dr. Tan.
>
> 17.  On August 20, 2012, Anzaldua was suspended for 10 days for the email that had been forwarded to Dr. Tan by Defendant Welge and/or Defendant Farwell from Anzaldua's private email account.
>
> *       *       *
>
> 47.  Upon information and belief, in or about August of 2012, Defendant Welge and Defendant Farwell intentionally accessed Plaintiff's private email address, without Plaintiff's consent or authorization, and obtained the draft email Plaintiff had prepared but had not sent to Dr. Tan, and then disseminated the email to Dr. Tan and the Board of the Fire District.

[ECF No. 1].  Other than these allegations, the Complaint does not describe the email written to Dr. Tan.

Defendants further assert Plaintiff's allegations are conclusory and implausible, lacking factual support.  As an initial matter, the Court notes the Complaint's allegations raise the question as to whether any access was truly unauthorized, as they indicate Welge gained access to

Plaintiff's private email and passwords when she was involved in a relationship with Plaintiff, and contain no indication that Plaintiff revoked his consent or authorization before she allegedly accessed the emails.  *See* 18 U.S.C. §§ 2510 et seq.; *Theofel v. Farey-Jones*, 359 F.3d1066, 1072-73 (9th Cir. 2003) (Act exempts conduct authorized by user of electronic communications service with respect to communication of user); *Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F.Supp.2d 817, 821 (E.D. Mich. 2000) ("for 'intentional' access in excess of authorization to be a crime and actionable civilly, the offender must have obtained the access to private files without authorization); *Deal v. Spears*, 980 F.2d 1153, 1156-57 (8th Cir. 1992) (constructive consent is adequate, and actual consent may be implied from the circumstances). The Court, however, further determines that the Complaint fails to state a SCA claim, in that it does not allege Welge or Farwell accessed a "facility" through which an electronic communication service was provided, or that  the email communications accessed were in "electronic storage" such as to bring them within the SCA's coverage.

The SCA prohibits unauthorized access to certain electronic communications.  18 U. S.C. 2701.  18 U.S.C. § 2711 provides protection against unlawful interception during the transmission phase.  Upon arrival in storage, the communication is protected by 18 U.S.C. § 2701.  The stored communications provisions of Section 2701 prohibit the unauthorized accessing of wire or electronic communications once stored; thus, it is at the time of **storage** of a transmitted communication that a communication becomes subject to the SCA. *Id.* (emphasis added).  Section 2701 of the SCA, in pertinent part, provides a cause of action against a party who "intentionally accesses without authorization a facility through which an electronic communication service is provided, . . . and thereby obtains, alters, or prevents authorized access

to a wire or electronic communication while it is in electronic storage in such system[.]" 18

U.S.C. §§ 2701, 2707(a)(providing a civil cause for any violation of the SCA).

In his opposition, Plaintiff states the Complaint alleges that the object of the electronic

trespass was his private email address, not his computer or any mobile device, and he argues that

this allegation of unauthorized access made through his email address states a violation of the

SCA [ECF No. 13].  He contends the draft email he did not send to Dr. Tan is protected by the

first part of the SCA's definition of "electronic storage," as the temporary storage of a wire or

electronic communication incidental to the electronic transmissions thereof.  Plaintiff argues the

email sent to Ms. Holland falls within the second party of the definition, because it is an email

stored by the electronic communication service after being sent to its intended recipient.

In their Reply, Defendants note Plaintiff did not attach a complete copy of the Holland

email, or any copy of the Tan email, to his Complaint.  Defendants contend the Court cannot

analyze the Complaint to determine whether Plaintiff's messages were stored on an internet

service provider's server pending delivery, in temporary or intermediate storage, or saved in an

Outlook program or on a device like Plaintiff's phone, because Plaintiff's Complaint lacks the

factual details that would allow the Court to determine whether the SCA might afford Plaintiff

protection.

"Because section 2701 of [SECA] prohibits only unauthorized access and not the

misappropriation or disclosure of information, there is no violation of section 2701 for a person

with authorized access to the database no matter how malicious or larcenous his intended use of

that access." *Sherman*, 94 F.Supp.2d at 820.  "[S]ection 2701(a) of the ECPA does not prohibit

the *disclosure* or *use* of information gained without authorization." *Id*.  Plaintiff's Complaint does

not sufficiently allege unauthorized access of a facility through which electronic communication

18

service was provided; nor does it sufficiently allege the email communications were in electronic storage.  The Court will dismiss Count III of Plaintiff's Complaint for failure to state a claim under the SCA.

**F.  Missouri Computer Tampering Act and Federal Claim**

Defendants claim Plaintiff fails to state a valid claim under the Missouri Computer Tampering Act, because he: 1) does not allege he is the "owner or lessee of the computer system, computer network, computer program, computer, computer service, or data; 2) does not define or describe the private email allegedly accessed, or indicate he was the owner of anything allegedly taken or accessed by Farwell and Welge; and 3) does not allege Farwell and Welge "accessed a computer, a computer system, or a computer network." [ECF No. 10 at 13]. Defendants also argue Plaintiff's allegations are too conclusory and fail to state a claim under *Iqbal* and *Twombly*, as the Complaint contains no factual support to show anyone "hacked" Plaintiff's computer or email account and its "allegations under Count IV represent only Plaintiff's blind guessing and jumping to conclusions about Farwell's and Welge's involvement[.]" [ECF No. 10 at 15].

The Missouri Computer Tampering Act ("MCTA"), Missouri Revised Statutes §§ 569.095 to 569.099, penalizes individuals who commit the "crime of tampering with computer data" if they "knowingly and without authorization or without reasonable grounds to believe" they have such authorization. Mo. Rev. Stat. § 569.095.  Tampering with computer data occurs when, among other things, a person takes a password that is intended to or does control access to the computer system or network; or receives, retains, uses or discloses any data he knows or believes was obtained in violation of subsection 1 of the statute.  Mo. Rev. Stat. § 569.095.1(4), (6).  In addition to any other available civil remedies, the MCTA provides that "the owner or

lessee of the computer system, computer network, computer program, computer service or data"
may institute a civil action against those who violate the MCTA, to recover compensatory
damages, certain expenses, and attorney's fees.  Mo. Rev. Stat. § 537.525.

Plaintiff contends he sufficiently alleges he is the owner of the data or documentation at
issue because he alleges he drafted both of the emails discussed in his Complaint [ECF No. 13 at
10-11].  He argues that his description of one of the emails as "an email dated July 23, 2012 to
Dr. David Tan regarding issues and concerns at the District[,]" and the other one "dated August
23, 2012, to Elizabeth Holland discussing matters of public concern[,]" sufficiently describes the
emails.  Plaintiff further contends his claim that Farwell and Welge hacked into his personal email
account must be accepted as true, and that it is plausible because he alleged Wegle had access to
his private email and passwords due to their previous relationship, and the emails were given to
the Board.

In their Reply, Defendants argue Plaintiff's state that Plaintiff makes only the following
four allegations regarding Welge and Farwell: 1) Welge knew Plaintiff's private email and
passwords, because she had been in a relationship with Plaintiff that ended in July 2011; 2) Welge
worked for Farwell at a bar; 3) Welge and Farwell accessed Plaintiff's private email to Tan, and
Farwell distributed it to Tan and the Board; and 4) Farwell and Welge accessed Plaintiff's private
email to Holland, and Farwell distributed it to the Board.  Defendants reiterate Plaintiff's key
allegations against Welge and Farwell, that they accessed his emails to Dr. Tan and Ms. Holland,
were made upon "information and belief" [ECF No. 14 at 9].

The Court finds Plaintiff's Complaint fails to state a claim against Welge or Farwell for
violation of the MCTA.  First, the Court notes that Plaintiff alleges:  "Welge gained access to
Plaintiff's private email and passwords when Defendant[] Welge and Plaintiff were in a

relationship.  Plaintiff and Welge's romantic relationship ended in July of 2011."  Accepting this statement as true, the reasonable inference is that Plaintiff was aware of Welge's access, and gave actual consent, whether expressly or constructively, to her access.  Furthermore, as emphasized by Defendants, Plaintiff's key allegations are made upon "information and belief," and fail to provide the factual or documentary support needed to make them plausible.  The Court finds that Plaintiff has not sufficiently alleged a colorable claim that Welge "knowingly and without authorization" taken a password intended to control access to any computer system or network. *See* Mo. Rev. Stat. §§ 537.525.1 ("In addition to any other civil remedy available, the owner or lessee of the computer system, computer network, computer program, computer service or data may bring a civil action against any person who violates sections 569.095 to 569.099 . . .."); and 569.095.1 (person commits crime of computer tampering if he "knowingly and without authorization . . ." "takes a password . . . about a computer system or network that is intended to or does control access to the computer system or network . . ." and "receives, retains, uses, or discloses any data he knows or believes was obtained in violation of [subsection 1 of § 569.095]").  Additionally, the Complaint does not allege Plaintiff is the owner or lessee of a computer system or network, as required for a computer tampering civil claim.  *See id.*  The Court will dismiss Count IV of Plaintiff's Complaint.

## V.      CONCLUSION

The Court will deny, in part, and grant, in part, Defendant's Motion to Dismiss.  Counts II, III, and IV of Plaintiff's Complaint shall be dismissed in their entireties.    Count I shall be dismissed, in part.  In accordance with this Memorandum and Order, the claims asserted in Count I shall be dismissed, with the exception of the individual capacity claims asserted against Defendants Robert Lee, Derek Mays, and Kenneth Farwell,

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [ECF No. 9] is **DENIED in part,** and **GRANTED in part**.

**IT IS FURTHER ORDERED** that Counts II, III, and IV of Plaintiff's Complaint [ECF No. 1] are **DISMISSED with prejudice**, in their entirety, for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff's claims brought against individual defendants in their official capacities are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's cause of action for municipal liability against Fire District, contained in Count I of his Complaint, is **DISMISSED with prejudice,** for failure to state a claim.  As no claims against Fire District remain, it shall be dismissed from this action.

**IT IS FURTHER ORDERED** that any due process claims asserted by Plaintiff in his Complaint, are **DISMISSED as abandoned**.

**IT IS FURTHER ORDERED** that all claims against Defendants Clarence Young, Bridget Quinlisk-Dailey, and Quinten Randolph are **DISMISSED with prejudice**.

So Ordered this 21st day of October, 2013.

_E. Richard Webber_
_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE

22