UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

STEVON ANZALDUA,                         )
                                         )
      Plaintiff,                        )
                                         )
      vs.                               )          Case No. 4:13CV01257 ERW
                                         )
NORTHEAST AMBULANCE and                  )
FIRE PROTECTION DISTRICT, et al.         )
                                         )
      Defendants.                       )

## MEMORANDUM AND ORDER

      This matter comes before the Court on Plaintiff's Motion for Leave to File First Amended

Complaint [ECF No. 29], and Plaintiff's Motion to Reconsider Memorandum and Order Dated

October 21, 2013 (Doc. 15), or Alternatively, Motion for Leave to Amend Complaint [ECF No.

18].

## I.    BACKGROUND

      On July 2, 2013, Plaintiff Stevon Anzaldua ("Plaintiff") filed a Complaint against

Northeast Ambulance and Fire Protection District ("Fire District"); Fire District Board of

Directors Derek Mays, ClarenceYoung, and Bridget Quinlisk-Dailey, in their official capacities

(collectively referred to as "Board"); Board Directors Robert Lee and Derek Mays, in their

individual capacities; Fire District Fire Chief Quinten Randolph, individually and in his official

capacity; Fire District Battalion Chief Kenneth Farwell, individually and in his official capacity;

and individual Kate Welge [ECF No. 1].  In his Complaint, Plaintiff alleged his employment with

Fire District was terminated on September 26, 2012, as a result of a conspiracy among the

defendants.  In Count I, Plaintiff brought a claim pursuant to 42 U.S.C. § 1983, alleging the

termination violated his First Amendment right to free speech, against Defendants Lee, Mays,

Quinlisk-Dailey, Randolph, and Farwell ("Fire District Defendants"). Under Count II, Plaintiff sued Fire District, Fire District Defendants, and Defendant Welge for conspiracy to violate his constitutional rights, cognizable under 42 U.S.C. § 1983. In Counts III and IV, Plaintiff also alleged Farwell and Welge violated federal and state computer privacy laws.

Fire District Defendants filed a Motion to Dismiss on August 26, 2013. On October 21, 2013, this Court granted, in part, Fire District Defendants' Motion to Dismiss [ECF No. 15]. In its Order, the Court dismissed with prejudice Counts II, III, and IV of Plaintiff's Complaint, for failure to state a claim. The Order also dismissed with prejudice Plaintiff's claims brought against individual defendants in their official capacities, and Plaintiff's cause of action for municipal liability against Fire District, contained in Count I of his Complaint. Because no claims remained against Fire District, the Order dismissed the district from the action. Additionally, the Order dismissed, as abandoned, any due process claims asserted by Plaintiff in his Complaint, and dismissed with prejudice all claims against Defendants Clarence Young, Bridget Quinlisk-Dailey and Quinten Randolph. The Court denied, in part, Fire Defendants' Motion to Dismiss, finding Count I of Plaintiff's Complaint sufficiently alleged colorable claims against Lee, Mays, and Farwell, in their individual capacities, to survive a dismissal motion.

Plaintiff then filed "Plaintiff's Motion to Reconsider Memorandum and Order Dated October 21, 2013 (Doc.15), or Alternatively, Motion for Leave to Amend Complaint" on October 28, 2013 [ECF No. 18]. In his Motion asking the Court to reconsider its dismissal with prejudice of Fire District and Randolph as parties, and of Counts II, III, and IV in their entirety, Plaintiff, noted he was thus prevented from amending his Complaint to state claims for relief, and requested leave to file an amended complaint. Plaintiff argued justice required that he be granted permission to amend his Complaint to address the deficiencies identified in the Court's Order,

because the Court did not find any amendment would be futile, only that there were insufficient factual allegations to support plausible claims for relief.

On November 27, 2013, the Court issued a Memorandum and Order, holding Plaintiff's Motion to Reconsider in abeyance, pending Plaintiff's submission of a proposed amended complaint [ECF No. 28]. Subsequently, Plaintiff timely filed the present motion, seeking leave to file his proposed Amended Complaint [ECF Nos. 29, 29-1]. Defendants Farwell, Lee, Fire District, and Randolph filed a Memorandum in Opposition to Plaintiff's Motion; and Plaintiff filed a Reply [ECF Nos. 38, 44].

Plaintiff's First Amended Complaint is brought against Fire District; Welge; and defendants Lee, Mays, Randolph and Farwell, in their individual capacities [ECF No. 29-1]. The Complaint asserts four claims: Count I – 42 U.S.C. Section 1983 Violation of Anzaldua's First Amendment Right to Free Speech (against Fire District, Lee, Mays, Randolph, and Farwell); Count II – Conspiracy to Violate Anzaldua's Constitutional Rights Cognizable under 42 U.S.C. § 1983 (against Lee, Mays, Randolph, and Farwell); Count III – Anzaldua's Cause of Action under 18 U.S.C. § 2707 Against Defendants Farwell and Welge; and Count IV – Anzaldua's Cause of Action under Section 537.525 of the Missouri Revised Statutes Against Defendants Farwell and Welge.

## II.    LEGAL STANDARD

Plaintiff moves, pursuant to Fed. R. Civ. P. 15(a)(2) and this Court's November 27, 2013, Order, for leave of the Court to file his First Amended Complaint. Rule 15 provides that a party may amend its pleading once as a matter of course within twenty-one days of serving it; or, if the pleading is one that requires a response, within twenty-one days after service of a responsive pleading or twenty-one days after service of certain motions. Fed. R. Civ. P. 15(a)(1).

Otherwise, a party may amend its pleading only if the opposing party consents in writing, or if the Court grants leave to amend. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

However, courts may deny motions for leave to amend when the Amended Complaint cannot withstand a motion to dismiss, when amendment is futile, when the pleading does not present at least colorable grounds for relief, or when the proposed amended pleading advances a claim or defense that is legally insufficient on its face. *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 225 (8th Cir. 1994); *Holloway v. Dobbs*, 715 F.2d 390, 392-93 (8th Cir. 1983).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Ordinarily, only the facts alleged in the complaint are considered for purposes of a motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Bell*

*Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Although courts must accept all factual allegations as true, they are not bound to take as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted).

## III.   DISCUSSION

As stated above, the Court determined in its October 21, 2013 Order that the Section 1983 First Amendment violations alleged against Lee, Mays, and Farwell, in their individual capacities, were sufficient to survive a dismissal motion. Thus, Plaintiff's original Complaint still asserts these claims in its remaining count. In its November 27, 2013 Order, the Court permitted Plaintiff the opportunity to cure the deficiencies identified in its original filing, and ordered him to submit a proposed amended complaint for the Court's consideration.

In their Memorandum in Opposition to Plaintiff's Motion for Leave to Amend Complaint, Defendants claim Plaintiff's proposed changes in his First Amended Complaint fail to remedy the defects of his original Complaint, and they argue his motion should be denied because, as a matter of law, the proposed amendment is futile. For purposes of Plaintiff's motion, the Court accepts as true the well-pleaded allegations contained in the First Amended Complaint, and construes them in the light most favorable to Plaintiff.

### A.   Plaintiff's § 1983 Violation of Free Speech claims against Fire District

The First Amended Complaint's first count asserts a Section 1983 violation of Plaintiff's First Amendment right to free speech against Fire District, Lee, Mays, Farwell, and Randolph, in their individual capacities.

A public employee asserting a claim of unlawful First Amendment retaliation must show he suffered an adverse employment action that was causally connected to his participation in a protected activity. *Dahl v. Rice Cnt'y, Minn.*, 621 F.3d 740, 744 (8th Cir. 2010). Under 42

U.S.C. § 1983, municipal entities ordinarily are not vicariously liable for the unconstitutional acts of their employees; however, a governmental entity may be held liable if the employee proves that its policy or custom was the "moving force" behind the action. *Id.*

In the October 21st Order, the Court dismissed Plaintiff's cause of action for municipal liability under § 1983, finding the original Complaint identified no official policy that was unconstitutional on its face or as implemented, or that played a role in his termination, and concluding Plaintiff's Complaint failed to allege sufficiently the three requirements of an unconstitutional custom claim. *See Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (differentiating between claims based on policy and those based on custom).

As in his original pleading, the First Amended Complaint identifies no official policy. Consequently, the Court must examine the amended pleading to determine whether the First Amended Complaint otherwise sufficiently alleges the existence of a claim, based either on policy, or on municipal custom or practice.

As pertinent to this determination, the First Amended Complaint [ECF No. 29-1] alleges as follows. The Board has final policymaking authority for Fire District, and has the authority to hire and retain Fire District employees. Plaintiff was hired by Fire District in January of 2008 as a paramedic, and later worked as a paramedic and firefighter. Plaintiff faithfully performed his duties until his discharge by Fire District, Lee, Mays, Randolph, and Farwell on September 26, 2012, after the Board found he had circulated an email to Ms. Elizabeth Holland, a reporter with the *St. Louis Post-Dispatch*, regarding problems and issues at the Fire District that have a negative impact on public health and safety. Prior to Plaintiff's termination, Fire District "had been issued and accused of" numerous violations by the state Health Department, including, but not limited to, the expiration of its license to possess and administer controlled substances.

Plaintiff contends, in April 2012, Fire District, through Lee, Mays, Randolph, and Farwell, began to harass Plaintiff in retaliation for Plaintiff expressing, as a private citizen, certain opinions and facts about problems at Fire District, including, but not limited to, complaining that the ambulances did not have the supplies needed to respond adequately to calls, and that Farwell, the District's Chief Medical Officer, was incompetent. On August 31, 2012, the newspaper ran a story written by Ms. Holland entitled "Northeast Fire District is Grilled Over Mishandling State Drug Paperwork," which, among other things, reported the expiration of Fire District's license to possess and administer controlled substances.

On September 13, 2012, Plaintiff claims he received a notice of hearing from Randolph to appear before the Board regarding the August 23, 2012 email Plaintiff sent to Ms. Holland and the newspaper. Plaintiff alleges Randolph suspended him until the September 24, 2012 hearing. Randolph provided Plaintiff with written notice of his termination, effective immediately, on September 24, 2012. Plaintiff argues the August 23, 2012 email was the only reason for his termination from his employment. The retaliation against Plaintiff included, but was not limited to, placing Plaintiff on extended probationary status, suspending him, and ultimately terminating his employment.

Unconstitutional custom claims require plaintiffs to show: 1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees; 2) deliberate indifference to, or tacit authorization, after notice of the unconstitutional misconduct, by the municipality's policymaking officials; and 3) the custom was the moving force behind the alleged misconduct. *Ware*, 150 F.3d at 880.

Fire District Defendants argue Plaintiff's proposed First Amended Complaint still fails to allege an unconstitutional custom or practice [ECF No. 38]. The Court agrees. As in his original

Complaint, Plaintiff has alleged no previous incidents or complaints where Fire District punished employees for protected speech made as private citizens. Furthermore, the First Amended Complaint's allegations do not show deliberate indifference to the unconstitutional misconduct, or tacit authorization by Fire District's policymaking officials after notice of the misconduct. Consequently, the Court finds Plaintiff's First Amended Complaint fails to allege sufficiently the three requirements for an unconstitutional custom claim asserted against a municipality under 42 U.S.C. § 1983.

However, Plaintiff claims his First Amended Complaint sufficiently alleges a municipal liability claim in accordance with *Monell v. Dept' of Soc. Serv.*, 436 U.S. 658 (1978), because the amended pleading asserts that the Board, which had final policymaking authority for Fire District, terminated him because he exercised his right to free speech, and that Randolph and Farwell participated in this constitutional deprivation [ECF No. 44 at 4-5]. Plaintiff contends a policy can be inferred from this single decision taken by the Board, as it is the highest authority responsible for setting Fire District policy in employment decisions, and he argues that the Board's termination of him for engaging in free speech is enough to impose municipal liability against Fire District. *See Dahl*, 621 F.3d at 743 (governmental entity may be held liable if plaintiff proves its policy or custom was moving force behind constitutional violation; policy can be inferred from single decision taken by highest officials responsible for setting policy in that area of entity's business). The Court concludes the proposed amendment of Count I is not futile. Liberally construing the First Amended Complaint in favor of Plaintiff, the Court finds Count I contains sufficient factual matter, accepted as true, to state a facially plausible claim for relief against Fire District.

### B. Plaintiff's § 1983 claims against Randolph

In the Court's October 21, 2013 Order, the Court dismissed defendant Randolph from the action, because the Complaint made no specific allegation against him, and it failed to allege Randolph played any role in the investigation, or the termination decision [ECF No. 15 at 11]. The Court determined Randolph's status as Fire District Chief, and his writing of the termination letter, were not enough to allow a reasonable jury to find that Randolph was himself involved in any unlawful activity. The Court found the most that could be inferred from the Complaint's allegations and the termination letter was Randolph followed Fire District's Board of Director's instructions and informed Plaintiff of the Board's decision.

In the factual allegations common to all counts, Plaintiff's First Amended Complaint alleges the following as to Randolph. In approximately April of 2012, the Fire District, through Lee, Mays, Farwell, and Randolph, began to harass Plaintiff in retaliation for Plaintiff expressing certain opinions and facts about problems at the Fire District as a private citizen. This retaliation included, but was not limited to, placing Plaintiff on extended probationary status, suspending him, and ultimately terminating his employment. On September 13, 2012, Plaintiff received a notice of hearing from Randolph to appear before the Board regarding an August 23, 2012 email he sent to reporter Elizabeth Holland of the St. Louis Post-Dispatch. Randolph suspended Plaintiff until the September 24, 2012 hearing. On September 26, 2012, Randolph provided Plaintiff with written notification of his immediate termination.

Plaintiff filed copies of the September 23, 2012 "Notice of Hearing," and the September 26, 2012 "Letter of Termination" sent to Plaintiff by Randolph with his submitted First Amended Complaint [ECF No. 29-1 at 26-30]. The Notice advised Plaintiff not to report for duty on September 23, but instead to appear before the Board for a disciplinary hearing on September 24,

2012.  It informed Plaintiff that the Board was providing him an opportunity to be heard before deciding whether further disciplinary action was warranted, and that Plaintiff would be allowed union representation, if he so desired.  The Notice told him the hearing concerned a belief Plaintiff circulated a personal email containing false and misleading statements that publicly defamed and denigrated Fire District.  The Notice further stated the email's statements appeared to be intentionally divisive, inflammatory, without just cause, purposefully perverse, and improperly motivated.  The Notice warned such behavior was a direct violation of Fire District's code of conduct.

After reciting previous disciplinary actions taken against Plaintiff for violations of Fire District's code of conduct, the Letter of Termination set forth the following findings of fact for the September 24th hearing:

> The Board accepted your admission and there from concluded that you circulated an email publicly defaming and denigrating the District without just cause.  It was also determined that your statements were seditiously false and misleading as well as ill-intended, divisive, and retaliatory for prior discipline issued by the Board in good faith.  Even though you admitted conveying such statements to, at least, one public entity; the number of other people and entities that you actually conveyed them to is unknown.  The Board found your explanation for publicly expressing and circulating false and misleading information to others as not credible.

[ECF No. 29-1 at 28].  The letter stated "the Board deemed this conduct to be totally unacceptable[,]" and informed Plaintiff the Board had decided to terminate his employment for "again violating the District's Code of Conduct."  As stated above, the First Amended Complaint alleges that Board has final policymaking authority for Fire District, and has the authority to hire and retain Fire District employees.  Randolph's status as Fire District Chief, and his writing of the notice termination letter, are not enough to allow a reasonable jury to find that Randolph was himself involved in any unlawful activity.

Count I of Plaintiff's First Amended Complaint additionally alleges the following as to Randolph. Plaintiff was terminated by Defendants based upon the exercise of his First Amendment rights as a private citizen speaking about issues or matters of public concern regarding Fire District. Plaintiff's termination was an adverse employment action authorized, approved, or ratified by Fire District, Lee and Mays, in which Randolph and Farwell participated, acting under color of state law as part of a broader conspiracy to protect Farwell and Fire District, by retaliating against Plaintiff for his protected speech. Plaintiff alleges Randolph directly participated in the violation of Plaintiff's rights by retaliating against him for engaging in protected speech, including, but not limited to, suspending Plaintiff, and then recommending to the Board, at Plaintiff's September 24, 2012 termination hearing, that Plaintiff be terminated for engaging in such speech. Plaintiff claims his termination under color of state law by Fire District, Lee, and Mays, with the participation of Randolph and Farwell, violates his rights secured by the First and Fourteenth Amendments. He believes Randolph's conduct was wanton, willful, and showed a reckless indifference to Plaintiff's constitutional rights, justifying an award of punitive damages against him in his individual capacity.

Defendants contend Plaintiff's proposed First Amended Complaint fails to state a claim against Randolph. They argue Plaintiff's allegations are mere conclusory statements about Randolph, and specifically assert he provides no supporting factual allegations for Paragraph 33 of his Complaint, which states: "Defendant Randolph directly participated in violation of Anzaldua's First Amendment rights by retaliating against him for engaging in protected speech, to include but not be limited to suspending Anzaldua and then recommending to the Board that Anzaldua be terminated for engaging in such speech at his termination hearing on September 24, 2012."

Plaintiff alleges in his First Amended Complaint that Randolph participated, and played a role in his termination. He asserts that Randolph suspended him, and recommended his termination to the Board, in order to retaliate against him for exercising his First Amendment rights. Plaintiff contends Fire District could be liable for Randolph's retaliatory termination recommendation, if Plaintiff's termination was the intended consequence of Randolph's actions, and argues that, if Randolph's unconstitutional acts could make Fire District liable for Plaintiff's constitutional deprivation, "there can be no doubt that [Randolph] can be held personally liable for his direct participation in the violation of Plaintiff's First Amendment rights" [ECF No. 44 at 3-4].

Plaintiff's assertion that Randolph participated and played a role in his termination by suspending him and recommending his termination to the Board to retaliate against him for protected speech constitutes the only factual allegation set forth in the First Amended Complaint that arguably states a potential § 1983 claim against Randolph. Liberally construing the First Amended Complaint in favor of Plaintiff, the Court finds Count I contains sufficient factual matter, accepted as true, to state a facially plausible claim for relief against Randolph in his individual capacity.

Count II of Plaintiff's proposed First Amended Complaint asserts a conspiracy claim, against Randolph and other defendants, in their individual capacities. To prevail on a Section 1983 conspiracy claim, Plaintiff must show that two or more individuals conspired for the purpose of depriving him of a constitutional right, and that an action was performed by at least one of the alleged co-conspirators in furtherance of the conspiracy, causing an injury or deprivation. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). Conspiracy allegations "must

be pled with sufficient specificity and factual support to suggest a 'meeting of the minds.'" *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988) (citation omitted).

Count II contains the following additional allegations concerning Randolph. Lee, Mays, Randolph, and Farwell, acting under color of law, met on multiple occasions (including, but not limited to, closed session meetings) to discuss the actions they would take against Plaintiff to retaliate against him for his exercise of free speech rights, so as to protect Fire District from scrutiny or criticism resulting from legitimate concerns Plaintiff was raising about the District's operations and their impact on public health and safety. At these meetings, the men agreed that, when Plaintiff raised legitimate concerns about Fire District operations and their impact, they would retaliate against him to discourage him from engaging in the protected activity, and they did so afterward, by extending his probation, suspending him, and terminating him.

Plaintiff's allegations here are Lee, Mays, Randolph, and Farwell conspired together and amongst themselves, and reached a mutual understanding to protect Farwell and shield the Fire District from public scrutiny by firing Plaintiff because of his constitutionally protected speech; and to undertake a course of conduct to protect each other from the consequences of the wrongful acts and constitutional deprivations as officials of Fire District. He maintains their actions violated his constitutional right to free speech. Plaintiff contends Fire District Defendants' overt acts included retaliating against Plaintiff as described above when he engaged in protected speech; suspending him because of his draft email to Dr. Tan, to deter him from engaging in such speech; and firing Plaintiff for pretextual reasons after he exercised his right of free speech. "Upon information and belief," Fire District Defendants engaged in a "sham investigation" designed to cover-up allegations Plaintiff made against Farwell and the District to Ms. Holland, and thereafter exonerated Farwell to justify Plaintiff's wrongful and retaliatory discharge and to

protect Fire District. Plaintiff alleges Lee, Mays, Randolph and Farwell furthered the conspiracy by participating in it from its inception, or by participating in the cover-up, or by ignoring the course of conduct so as to insulate themselves and others from liability for the outrageous and unlawful acts of Fire District Defendants, showing a tacit understanding to carry out the prohibited conduct.

In their opposition memorandum, Fire District Defendants assert that Plaintiff specifically alleges Randolph and his co-conspirators were acting under color of state law, and accordingly, the intracorporate conspiracy doctrine thus applies, and entitles them to summary judgment on Count II. The Court agrees that the doctrine may apply in the context of summary judgment. *See Runs After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985) (conspiracy claim under 42 U.S.C. § 1985 failed to state a claim against members of a tribal council; entity or governmental body cannot conspire with itself, and individual members acting in their official capacities cannot conspire when they act together with other members in taking official action on behalf of entity or governmental body); *Cook v. Tadros*, 312 F.3d 386, 388 (8th Cir. 2002) (district court granted motion for judgment as matter of law on § 1983 conspiracy claim, on the basis of inadequate evidence and the intracorporate conspiracy doctrine; basis for court's ruling was inconsequential, however, because, in light of jury's verdict that there was no underlying constitutional injury, conspiracy claim was moot); *Doe v. Board of Educ. of Hononegah Cmty. High Sch. Dist. #207*, 833 F.Supp. 1366, 1382 (N.D. Ill. Sept. 30, 1993) (intracorporate conspiracy doctrine applies to bar any conspiracy claims under § 1983). However, the Court concludes application of the intra-corporate conspiracy doctrine is not appropriate under the standard of review for a dismissal motion, or when determining whether to grant leave to file an amended pleading.

Defendants also contend the First Amended Complaint does not provide factual allegations to support a "meeting of the minds." They claim the First Amended Complaint's conspiracy allegations are completely speculative, as Plaintiff was not in the meetings and has no idea as to what was discussed, and they characterize the additional allegations proposed in the amended pleading as nothing more than legal conclusions. Given the present procedural posture of the matter, Defendants are correct as to Plaintiff's lack of actual or personal knowledge of the alleged meetings and their discussions. Nevertheless, the Court cannot conclude amendment of the complaint would be futile. Liberally construing the First Amended Complaint in favor of Plaintiff, the Court finds Count II contains sufficient factual matter, accepted as true, to state a facially plausible claim for relief against Randolph in his individual capacity.

### C. Plaintiff's conspiracy claim against Lee, Mays, Randolph & Farwell

Count II of Plaintiff's original Complaint asserted a conspiracy claim against all defendants. In that claim, Plaintiff alleged Fire District Defendants, acting under color of state law, conspired together, reaching a mutual understanding to protect Farwell, shield Fire District from public scrutiny, and fire Plaintiff because of his constitutionally protected speech. Plaintiff generally alleged Fire District Defendants engaged in a "sham investigation," and further alleged Farwell and Welge illegally accessed Plaintiff's private emails, and disseminated them to the Board without authorization. Plaintiff additionally claimed Fire District Defendants furthered the conspiracy by participating in it from its inception, by participating in its coverup, or by ignoring the course of conduct so as to insulate themselves and others from liability.

In the Order dismissing the conspiracy claim asserted in Plaintiff's original Complaint, the Court found the Complaint, and its incorporated exhibits, contained no support for an inference that Farwell and Welge had a "meeting of the minds" to deprive Plaintiff of his

constitutional rights by accessing his private email, and lacked an allegation of an agreement between Welge and one of the state officers to cause a deprivation of Plaintiff's constitutional rights. The Court also determined the Complaint lacked allegations to support an inference Fire District Defendants had reached any agreement to conduct a sham investigation, or that the Board colluded or conspired before casting votes in the termination decision.

As discussed in the Court's analysis of the claims brought against Randolph in his individual capacity, the First Amended Complaint's second count asserts a conspiracy claim against Lee, Mays, Randolph, and Farwell, alleging violation of Plaintiff's constitutional rights cognizable under Section 1983. Again, liberally construing the First Amended Complaint in favor of Plaintiff, the Court finds Count II contains sufficient factual matter, accepted as true, to state a facially plausible claim for relief against these defendants in their individual capacities.

**D.      Plaintiff's Cause of Action under 18 U.S.C. § 2707**

The Federal Stored Wire & Electronic Communications & Transactional Records Access Act ("SCA") prohibits unauthorized access to certain electronic communications. 18 U. S.C. 2701. 18 U.S.C. § 2711 provides protection against unlawful interception during the transmission phase. Upon arrival in storage, the communication is protected by 18 U.S.C. § 2701. The stored communications provisions of Section 2701 prohibit the unauthorized accessing of wire or electronic communications once stored; thus, it is at the time of **storage** of a transmitted communication that a communication becomes subject to the SCA. *Id*. (emphasis added). Section 2701 of the SCA, in pertinent part, provides a cause of action against a party who "intentionally accesses without authorization a facility through which an electronic communication service is provided, . . . and thereby obtains, alters, or prevents authorized access

to a wire or electronic communication while it is in electronic storage in such system[.]" 18

U.S.C. §§ 2701, 2707(a) (providing a civil cause for any violation of the SCA).

The Court's October 21 Order dismissed Plaintiff's original SCA claim, brought pursuant

to 18 U.S.C. § 2707, noting the Complaint's allegations indicated Welge gained access to

Plaintiff's private email and passwords when she was involved in a relationship with Plaintiff,

and contained no indication that Plaintiff revoked his consent or authorization before Welge

allegedly accessed the emails. The Court further determined the Complaint failed to state a SCA

claim, because it did not allege Welge or Farwell accessed a "facility" through which an

electronic communication service was provided, or allege the email communications were in

"electronic storage" as contemplated by the SCA.

In Count III of his First Amended Complaint, Plaintiff reasserts his SCA claim against

Farwell and Welge. Plaintiff alleges that, while he and Welge were in a romantic relationship,

Plaintiff gave Welge his Gmail password so that she could email his resume to prospective

employers on his behalf. He further alleges that he did not give Welge general permission to

access his account, and did not realize she had continued to access his personal Gmail account

until he investigated how his personal emails were being provided to Fire District. Plaintiff

alleges his romantic relationship with Welge ended in July of 2011, and he "did not know, nor

did he authorize Defendant Welge to access his personal Gmail account at any time before or

after that relationship ended, except to send the resumes on his behalf as set forth above" [ECF

No. 29-1 at 14].

Plaintiff further alleges Welge worked for Farwell at Da Elite Bar & Grill, and asserts

Plaintiff traced the access of his personal Gmail account to a location in the vicinity of Da Elite

Bar & Grill. Paragraphs 52 and 53 of Count III contain allegations made "upon information and

belief" [ECF No. 29-1 at 14]. In paragraph 52, Plaintiff asserts Welge and Farwell, without his authorization, intentionally accessed his private Gmail account through Gmail's servers in July of 2012, while they were at Da Elite Bar & Grill, "and obtained the draft email Anzaldua had prepared but had not sent to Dr. Tan, and sent that email to Dr. Tan" [ECF No. 29-1 at 14]. Plaintiff further alleges in paragraph 52: "At the time this unauthorized access was made the draft email was stored on Gmail's server as a draft message, and therefore, in temporary, intermediate electronic storage with a communications facility incidental to its electronic transmission within the meaning of the Federal Stored Electronic Wire and Communications and Transactional Records Access Act."

In paragraph 53, Plaintiff alleges Welge and Farwell intentionally accessed his Gmail account again in August of 2012, "and obtained the email Plaintiff had sent to Ms. Holland of the *St. Louis Post-Dispatch* and then forwarded the email to Defendant Farwell, who disseminated it to Randolph and/or the Board of the Fire District."

"Federal courts interpreting [the SCA] have noted that its 'general purpose . . . was to create a cause of action against computer hackers (e.g., electronic trespassers)." *Lasco Foods, Inc. v. Hall and Shaw Sales, Mktg., & Consulting, LLC*, 600 F.Supp. 2d 1045, 1049 (E.D. Mo. Jan. 22, 2009). "The statutes are generally aimed towards outside, third parties or other 'high-tech' criminals . . .." *Id.* In *Lasco*, the district court dismissed the plaintiff's SCA cause for failure to state a claim, because the complaint failed to allege the defendants' access was "unauthorized" within the meaning of the SCA. *Id.* at 1050. In its analysis, the court noted the defendants had virtually unrestricted access to the plaintiff's information during their employment with the plaintiff, but fraudulently or intentionally exceeded their authorization to access the company's protected computers. *Id.* The court recognized the thrust of the plaintiff's

18

claim was the generalization that the defendants obtained information for improper purposes, and the court determined the defendants' improper use of the plaintiff's information was not a SCA violation, because the plaintiff had afforded defendants access to its computer network. *Id.*

Similarly, Count III of Plaintiff's First Amended Complaint alleges Plaintiff gave Welge the password to his Gmail account so that she could perform certain actions on his behalf, and Welge later used the password to obtain information for improper purposes. Thus, the alleged improper use of Plaintiff's information was not a SCA violation, because Plaintiff gave Welge access to his Gmail account. The Court finds Count III of Plaintiff's First Amended Complaint fails to state a claim, and warrants dismissal. Accordingly, the Court concludes amendment would be futile, and will deny leave to amend as to Count III.

**E.      Plaintiff's Cause of Action under Missouri Revised Statutes § 537.525**

The Court also dismissed Plaintiff's Missouri Computer Tampering Act ("MCTA") claim, brought pursuant to Missouri Revised Statutes § 537.525, in the October 21 Order. The MCTA provides a civil cause of action for the owner or lessee of a computer system, computer network, computer service or data, against individuals who commit the crime of computer tampering. Mo. Rev. Stat. § 537.525. Missouri Revised Statutes § 569.095 provides, in pertinent part:

> 1.  A person commits the crime of tampering with computer data if he knowingly and without authorization or without reasonable grounds to believe that he has such authorization:
>
> *      *      *
>
> (3)  Discloses or takes data, programs, or supporting documentation, residing or existing internal or external to a computer, computer system, or computer network; or
>
> *      *      *
>
> (6) Receives, retains, uses, or discloses any data he knows or believes was obtained in violation of this subsection.

In its determination that the Complaint failed to state a claim against Welge or Farwell for violation of the MCTA, the Court again found the reasonable inference from the Complaint's allegations, accepted as true, was that Plaintiff was aware of Welge's access, and gave actual consent, whether expressly or constructively, to her access. The Court also noted Plaintiff's key allegations were made "upon information and belief," and failed to provide the factual or documentary support needed to make them plausible. The Court found Plaintiff had not sufficiently alleged a colorable claim that Welge "knowingly and without authorization" had taken from Plaintiff a password intended to control access to any computer system or network; or that Plaintiff was the owner or lessee of a computer system or network.

Count IV of Plaintiff's First Amended Complaint incorporates by reference its preceding paragraphs that allege the facts surrounding Welge's access to Plaintiff's Gmail password and indicate Plaintiff's awareness of Welge's access, and his consent to such access. Count IV of Plaintiff's First Amended Complaint further alleges, in paragraph 59:

> Defendants Farwell and/or Welge knowingly and without authorization, or without grounds to believe that they had authorization, took and disclosed data/supporting documentation (the emails drafted, and therefore, owned by Anzaldua as set forth in paragraphs 12 and 18 above) residing or existing internal to a computer, computer system, or computer network in violation of § 569.095.(3) R.S.M.O.

[ECF No. 29-1 at 16-17]. Paragraph 60 additionally alleges that Farwell or Welge received, retained, used, or disclosed the information they obtained in violation of the MCTA.

For the reasons discussed in its analysis of the SCA claim asserted in Plaintiff's First Amended Complaint, the Court finds Plaintiff's MCTA claim fails sufficiently to allege Welge or Farwell without authorization took and disclosed data or supporting documentation residing or existing internal to a computer, computer system, or computer network in violation of Mo. Rev. Stat. § 569.095(3). The Court further finds Plaintiff's MCTA claim fails sufficiently to allege

these defendants without authorization received, retained, used, or disclosed data they knew or believed was obtained in violation of Section 569.095. Accordingly, the Court concludes amendment would be futile, and will deny leave to amend as to Count IV also. The Court finds Count IV of Plaintiff's First Amended Complaint fails to state a claim and must be dismissed.

## IV.     CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File First Amended Complaint [ECF No. 29] is **GRANTED in part, and DENIED in part**. In accordance with the Court's discussion herein, Plaintiff is granted leave to file a First Amended Complaint asserting Counts I (42 U.S.C. Section 1983 Violation of Anzaldua's First Amendment Right to Free Speech) and II (Conspiracy to Violate Anzaldua's Constitutional Rights Cognizable Under 42 U.S.C. § 1983) as pleaded in the proposed First Amended Complaint [ECF No. 29-1]. Plaintiff is denied leave to file a First Amended Complaint asserting Counts III (Anzaldua's Cause of Action Under 18 U.S.C. § 2707 Against Defendants Farwell and Welge) and IV (Anzaldua's Cause of Action Under Section 537.525 of the Missouri Revised Statutes Against Defendants Farwell and Welge), as amendment would be futile.

**IT IS FURTHER ORDERED** that Counts III and IV of Plaintiff's First Amended Complaint [ECF No. 29-1] are **DISMISSED, with prejudice**.

**IT IS FURTHER ORDERED** that , in accordance with the Court's discussion and rulings herein, "Plaintiff's Motion to Reconsider Memorandum and Order Dated October 21, 2013 (Doc. 15), Alternatively, Motion for Leave to Amend Complaint" [ECF No. 18] is **GRANTED, in part.**

**IT IS FURTHER ORDERED** that Plaintiff shall file his amended complaint, in

accordance with the Court's discussion herein, within ten (10) days of the entry of this Order.

Dated this __5th__ day of February, 2014.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE